UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| DONNIE EUGENE AIKINS, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 6:13-CV-54 |
| § | |
| WARRIOR ENERGY SERVICES CORP., § | |
| § | |
| Defendant. § | |

# MEMORANDUM AND ORDER

This is a lawsuit brought by Plaintiffs who operated trucks as employees of Warrior Energy Services Corp., an oilfield services company, and who now seek overtime pay under the Fair Labor Standards Act. Under recent changes to federal law, their entitlement to overtime pay depends on the type of trucks they operated. Warrior moved for summary judgment (Docket Entry No. 51) on the ground that Plaintiffs, as operators of heavy vehicles weighing more than 10,000 pounds, fall within the Motor Carrier Act exemption to the FLSA's overtime pay requirements. Those heavy vehicles include coil tubing trucks, which guide the spool of coiled tubing into the well; fluid pump trucks, which provide pressure down-hold; and cranes, which are used to set up and take down the coiled tubing unit and fluid pump unit's access to the well.

Plaintiffs do not dispute their regular involvement with these heavy trucks and others, but contend that under the Technical Corrections Act of 2008 they

qualify for overtime as long as their work "in part" involved lighter vehicles weighing 10,000 pounds or less.  Those lighter vehicles are Ford F-250 pickup trucks that Plaintiffs contend they regularly drove to perform various duties.

## I. BACKGROUND

The sixty-six Plaintiffs in this lawsuit were Warrior employees whose jobs involved servicing oil wells in North Dakota, Montana, and other states undergoing an oil boom.  They worked in crews based in Warrior's Dickinson, North Dakota, office, and travelled to wells owned by Warrior's customers to provide coil tubing services, in which long tubes are inserted into oil wells to stimulate production and to clean the wells.  Jobs were typically located several hours from Dickinson, and took a number of days to complete.  For the duration of the jobs, crews were housed by Warrior in hotels or "man camps," sites built to house oilfield crews. Docket Entry No. 51-2 ¶ 16.  Plaintiffs were paid a fixed salary and bonuses until November 2012, when, after a merger and reorganization, they began to be paid on an hourly basis with overtime.  Plaintiffs brought this FLSA suit to recover unpaid overtime wages for hours worked in excess of 40 hours per week.  It was filed in North Dakota, where most of the Plaintiffs worked, but the parties agreed to

transfer the case to this Court as Warrior does business in Texas and has similar employees working in this district.[1]

Given the large number of Plaintiffs, the Court scheduled an initial round of discovery limited to ten bellwether Plaintiffs, with five chosen by each side. Plaintiffs chose not to take the depositions of their five. Warrior deposed four of its five selected bellwether plaintiffs—Michael Alvarado, Matthew Scott Barrows, Cody Holland, and Randall Newell. Finding this sufficient to present a "test case" on the statutory issue presented, the Court allowed Warrior's summary judgment motion to go forward. Docket Entry No. 41.

The summary judgment evidence focuses on whether, how often, and under what circumstances Plaintiffs operated Ford F-250 pickup trucks. This is critical, because, as discussed in more detail below, Plaintiffs' eligibility for FLSA overtime pay depends on their use of "motor vehicles weighing 10,000 pounds or less." *See* SAFETEA–LU Technical Corrections Act of 2008, Pub. L. No. 110-244, § 306(c), 122 Stat. 1572. It is not disputed that Warrior's Ford F-250s, operated without an attached trailer, fall at or below the threshold weight of 10,000 pounds.

According to Warrior, Plaintiffs' primary duties involved the operation of a number of vehicles weighing well over 10,000 pounds—coil tubing trucks, fluid

---

[1] A similar case against Warrior, involving workers in Texas, is also pending in this district: *Call v. Warrior Energy Servs. Corp.*, No. 6:14-cv-18 (S.D. Tex. filed Mar. 6, 2014).

pump trucks, crane trucks, "blow out preventer transport" trucks, nitrogen trucks, and nitrogen transport trucks. Docket Entry No. 51-2 ¶¶ 5–10. Although Warrior admits that Ford F-250s were involved in the jobs, the company asserts that they were only used by supervisors and almost always had a heavy trailer attached, raising the weight of the trucks beyond the 10,000 pound threshold. Docket Entry No. 51-2 ¶ 11.

Plaintiffs, however, emphasize their use of the Ford F-250s, without an attached trailer, during coil tubing jobs. Although each bellwether Plaintiff provides slightly different details about his own use, each claims in a declaration that he drove the pickup trucks at least weekly and drove them on public highways without trailers attached. *See* Docket Entry No. 52-1, Exs. A–D. Each states, for example, that he drove the F-250s "just as much" or "more than" he drove larger vehicles. *See* Docket Entry No. 52-1 at 2, 14 (Alvarado and Newell: "just as much"); *id.* at 6 (Barrows: "just as much or more than"); *id.* at 10 (Holland: "more than"). Each bellwether Plaintiff states that one purpose of the pickup trucks was to bring fuel to the well site. For example, Alvarado states:

> There was a constant and continuing need and a part of my job duties to supply the fuel trailer and well service equipment by retrieving fuel from gas and fueling stations by driving the Ford F-250 (without any trailer attached) on the public highways. In the remote locations that we worked servicing wells in North Dakota and Montana, fuel runs for the slip tanks in the Ford F-250 from the well site to a fueling station could be substantial distances from 12 miles to 30 miles away.

Docket Entry No. 52-1 at 2.  Each also states that the pickups were used to transport the crew and supplies between the crew's lodging (or Warrior's shop) and the well sites.  As Alvarado states:

> [P]rior to beginning and after well service jobs for the day, I also routinely and regularly drove . . . [a] Ford F-250 containing the crew, tools, supplies and equipment to and from locations as directed by my supervisor after meeting at a designated location at the well site . . . [,] the hotel or "man camp" parking area . . . or Defendant's shop or "yard". . . . I was not relieved of my work/driving duties until we returned to the man camp or hotel.

*Id.* at 3.

## II. STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III. MOTION TO STRIKE

Warrior moves to strike the bellwether Plaintiffs' declarations (Docket Entry No. 57), which are the entirety of the evidence Plaintiffs put forward in opposition

5 / 19

to Warrior's motion for summary judgment. Warrior argues that the declarations are "inconsistent with and contrary to Plaintiffs' sworn deposition testimony," Docket Entry No. 57 at 2, and notes that "the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984). This "sham-affidavit" rule is "applied sparingly" and requires an "inherent inconsistency" between the declaration and the declarant's earlier deposition testimony. *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, 846 F. Supp. 2d 732, 750 (S.D. Tex. 2012) (quoting *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010)).

Warrior, however, has not shown inherent contradictions between the bellwether Plaintiffs' deposition testimony and their declarations. For example, Warrior argues that deposition testimony that the crews often had a 600-gallon "fuel buffalo" and that Warrior's customers sometimes provided fuel to Warrior's crews is inconsistent with statements in the declarations that trips off the well site to get fuel took place "numerous times per day." *See* Docket Entry No. 57 at 7. To the extent that there are differences between Plaintiffs' deposition testimony and declarations, they are not directly contradictory, as they can be read as merely supplementing the deposition testimony. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("When an affidavit merely supplements rather than

contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment."). And in many instances, Plaintiffs' deposition testimony is in line with their declarations. For example, although Warrior states that Plaintiff Holland "made no mention of making fuel runs to get fuel for the coil tubing equipment during his deposition," he in fact stated that his duties included "driving the F250, driving the truck, fuelling, [and] putting supplies in the pickup." Holland Dep., Docket Entry No. 61-1, 22:19–20. Another example comes from Barrows, who testified in his deposition that "hauling fuel in the crew truck . . . . [t]o the fuel station and back" was done "several times per day." Barrows Dep., Docket Entry No. 57-3, 34:2–13. The Court thus denies Warrior's motion to strike (Docket Entry No. 57) and considers all of the evidence, disregarding that pertaining only to the non-bellwether Plaintiffs, in ruling on Warrior's motion for summary judgment.

## IV. FAIR LABOR STANDARDS ACT COVERAGE

### A. The Technical Corrections Act

Plaintiffs sued for overtime wages under the FLSA, which requires that employees be paid one and one half times their regular rate of pay for hours worked over forty in a workweek. 29 U.S.C. § 207(a). The Motor Carrier Act (MCA) exemption, however, exempts from the FLSA's overtime requirements "any employee with respect to whom the Secretary of Transportation has power to

establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1). The Secretary of Transportation has the power to prescribe the qualifications and maximum hours of motor carrier employees in order to ensure "the safety of operations on the roads and highways of this country." *Allen v. Coil Tubing Services, L.L.C.*, 846 F. Supp. 2d 678, 689 (S.D. Tex. 2012) *aff'd*, 755 F.3d 279 (5th Cir. 2014) (citing *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 539 (1940)). The MCA exemption has been amended a number of times since its enactment. *See Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 713–15 (S.D. Tex. 2014) (discussing the history of the MCA exemption). Despite that history, the dispute in this case comes down to a single statutory provision of the SAFETEA–LU Technical Corrections Act of 2008, Pub. L. No. 110-244, 122 Stat. 1572 (TCA).[2]

The TCA "both restored"—and therefore widened—"the scope of the Secretary of Transportation's regulatory jurisdiction . . . *and* simultaneously narrowed the scope of the MCA exemption." *Vanzzini*, 995 F. Supp. 2d at 715. It accomplished the latter by broadening the FLSA overtime requirement to "covered employee[s] notwithstanding" the MCA exemption. *See* TCA § 306(a); *McMaster*

---

[2] Although it was enacted in 2008, the TCA has not been codified. Warrior emphasizes this fact, perhaps to suggest that it should not "override[] the application of the long-established MCA exemption." Docket Entry No. 51 at 26. The Court, of course, cannot weigh the importance of different duly enacted pieces of legislation based on whether or not they are contained in the U.S. Code; it must apply the law as it stands.

*v. E. Armored Servs., Inc.*, --- F.3d ----, 2015 WL 1036035, at *2 (3d Cir. Mar. 11, 2015) ("'[C]overed employees' are entitled to overtime."). The statute goes on to define "covered employee" as "an individual"

> (1) who is employed by a motor carrier or motor private carrier . . .
>
> (2) whose work, in whole or in part, is defined—
>
>> (A) as that of a driver, driver's helper, loader, or mechanic; and
>>
>> (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . . and
>
> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

TCA § 306(c).

Plaintiffs do not dispute Warrior's contention that absent the TCA, the MCA exemption would apply to them and they thus would not be entitled to overtime wages. Instead, the parties argue about the applicability of the TCA's definition of "covered employee" to Plaintiffs. In particular, they focus on the second and third elements of that definition—that is, they disagree about the type and amount of work on "motor vehicles weighing 10,000 pounds or less" that is sufficient to

trigger FLSA coverage for drivers who would otherwise be exempted from the law by the MCA, and whether that work constituted Plaintiffs' "duties."[3]

Warrior relies on what it describes as the "prevailing view" of section 306, asserting that, under the TCA, "the motor vehicle exemption should apply so long as the time an employee spends operating commercial motor vehicles [which include vehicles weighing 10,001 pounds or more[4]] is more than *de minimis*." Docket Entry No. 51 at 29 (citing *Avery v. Chariots For Hire*, 748 F. Supp. 2d 492, 500 (D. Md. 2010)). But many decisions, including some that Warrior cites in support of its position, instead read section 306 to afford overtime coverage to employees, notwithstanding the MCA, as long as they perform "some meaningful work" on vehicles weighing 10,000 pounds or less. *See, e.g.*, *Lucas v. NOYPI,*

---

[3] Although Warrior's briefing includes a substantial discussion arguing that Plaintiffs have the burden of proof for asserting FLSA coverage pursuant to the TCA (as opposed to exemptions like the MCA on which an employer has the burden), this issue is not particularly consequential at this stage, as Plaintiffs do not contest the point and accordingly put forward evidence in support of their position. Because it is ordinarily the plaintiff's burden to establish that he or she is covered by the FLSA, *see Mendoza v. Detail Solutions, LLC*, 911 F. Supp. 2d 433, 439 (N.D. Tex. 2012) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 120 (1946)), that is likely the case under the TCA coverage provision as well.

[4] "Commercial motor vehicles" includes vehicles with "a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater." 49 U.S.C. § 31132. Warrior and some courts have used the gross vehicle weight rating measure in analyzing covered employee status under the TCA, despite the fact that the TCA only refers to "motor vehicles weighing 10,000 pounds or less." *See McCall v. Disabled Am. Veterans*, 723 F.3d 962, 966 (8th Cir. 2013) (using gross vehicle weight rating, not actual weight, as the appropriate measure under the TCA). Other courts have used actual weight as the appropriate measure. *See Glanville v. Dupar, Inc.*, 2009 WL 3255292, at *8 (S.D. Tex. Sept. 25, 2009) ("In the absence of a specific definition in the TCA, the ordinary meaning of 'weight' controls."). This distinction is not relevant for the purposes of this order, because the parties do not dispute that F-250s without attached trailers qualify as "vehicles weighing 10,000 pounds or less" and that F-250s with attached trailers do not.

*Inc.*, 2012 WL 4754729, at *9 (S.D. Tex. Oct. 3, 2012); *Allen*, 846 F. Supp. 2d at 705. That is, instead of applying the so-called "prevailing view" that any non-*de minimis* work on heavier vehicles is sufficient to exempt employees from FLSA coverage, these cases hold the opposite: that any meaningful use of *lighter* vehicles entitles employees to overtime under the FLSA regardless of how often they also work with heavy trucks. Courts taking the former view appear to be outliers, applying pre-TCA law. *See Avery*, 748 F. Supp. 2d at 500 (citing *Hernandez v. Brink's, Inc.*, 2009 WL 113406, at *7 (S.D. Fla. Jan. 15, 2009), which applied pre-TCA law).

Given the language of section 306(c)(2), which states that a covered employee's work need only "in part" affect the safety of vehicles weighing 10,000 pounds or less, it is unsurprising that few courts have held that *any* substantial work on larger vehicles disqualifies an employee from the FLSA's overtime mandate. In support of its preferred interpretation, Warrior points to the third element of the TCA's definition of "covered employee," which establishes that drivers must "perform[] duties" on vehicles weighing 10,000 pounds or less, and notes that this provision is not qualified by the same "in whole or in part" language. But there is little reason to believe that Congress intended to negate the "in part" language of section 306(c)(2) by failing to include a similar qualification in the next provision. A more plausible reading is that, in order to be owed

overtime notwithstanding the MCA, an employee must both (1) perform some work that "affect[s] the safety of operation of" smaller vehicles, and (2) it must be part of the employee's "duties" to do so. The "duties" element may prevent *de minimis* or aberrational activities outside the scope of an employees' routine duties from qualifying an employee for TCA coverage. It does not state or imply, however, that covered employees cannot also have substantial duties involving larger vehicles. The Department of Labor has endorsed this view, noting in a guidance document that "even in weeks where employees worked on vehicles weighing more than 10,000 pounds (and thus were subject to Department of Transportation regulations), those employees would still be entitled to overtime if they worked on vehicles weighing less than 10,000 pounds." *Hernandez v. Alpine Logistics, LLC*, 2011 WL 3800031, at *5 (W.D.N.Y. Aug. 29, 2011) (discussing Department of Labor, Wage & Hour Division, Fact Sheet #19 (Nov. 2009), *available at* http://www.dol.gov/whd/regs/compliance/whdfs19.pdf).

The Court thus follows the majority of courts (including the only court of appeals) to have addressed the issue, and declines to adopt a reading of the TCA that any significant use of vehicles weighing more than 10,000 pounds excludes an employee from FLSA coverage. *See, e.g.*, *McMaster*, 2015 WL 1036035, at *1–2 (holding that a driver who "spent 51% of her total days working on vehicles rated heavier than 10,000 pounds, and 49% of her total days working on vehicles rated

lighter than 10,000 pounds" fell "squarely within the [TCA's] definition of a 'covered employee'"); *Lucas*, 2012 WL 4754729, at *9 (concluding that because plaintiffs "did not perform meaningful work for more than an insubstantial time with non-commercial vehicles," they were not "covered employees" under the TCA); *Allen*, 846 F. Supp. 2d at 705 (finding fact issue where parties did not provide sufficient evidence concerning the plaintiffs' "use (or non-use) of non-commercial vehicles"). Because the TCA extends FLSA coverage to motor carrier employees whose work, even "in part," "affect[s] the safety of operation of motor vehicles weighing 10,000 pounds or less," the law does not exclude a motor carrier employee from FLSA coverage merely because his or her work also involves operating heavier vehicles.

That is not the end of the statutory dispute, however. As mentioned above, some courts have suggested that there is a minimum threshold of the type or amount of work that employees must perform on vehicles weighing 10,000 pounds or less before the TCA affords them FLSA overtime coverage. Two courts in this district, for example, have held that a covered employee under the TCA "must perform *some meaningful work for more than an insubstantial time* with vehicles weighing 10,000 pounds or less." *Lucas*, 2012 WL 4754729, at *9; *Allen*, 846 F. Supp. 2d at 705 (emphasis added). Plaintiffs argue, to the contrary, that there is no "meaningful work" requirement in the TCA, and cite *Vanzzini v. Action Meat*

*Distribs., Inc.*, 2014 WL 426494 (S.D. Tex. Jan. 31, 2014), which denied summary judgment with regard to an employee without determining whether his work met some minimum threshold.  Plaintiffs argue that the "in whole or in part" language in the TCA affords FLSA coverage to employees as long their work involves vehicles weighing 10,000 pounds or less, "no matter how small" a portion of their work this is.[5]  As a textual matter, this position finds support in light of other FLSA exemptions that set a higher statutory threshold by speaking of "primary duties" and whether employees "customarily and regularly engage" in those duties.  *See, e.g.*, 29 U.S.C. § 213(a)(17)(A) (exempting, among others, "any employee who is a computer systems analyst . . . whose primary duty is the application of systems analysis techniques and procedures . . . "); 29 C.F.R. § 541.500(a) (defining "outside salesman" to include employees whose "primary dut[ies]" involve sales and who are "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty").  On the other hand, as mentioned above, the "duties" element of the TCA may functionally act as a minimum threshold by excluding uncommon activities that fall outside of an employee's ordinary responsibilities.

---

[5] In support of this argument, Plaintiffs point to *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630 (2011).  In that case, the Supreme Court held that language in the Federal Employers Liability Act stating that railroads are liable to their employees for injuries "resulting *in whole or in part* from the negligence" of the railroad means that railroads are liable "if [the railroad's] negligence played a part—no matter how small—in bringing about the injury." *Id.* at 2644.

The Court, however, need not resolve whether or not there is any minimum threshold in the TCA for purposes of this motion. The "meaningful work" standard, as applied by other district courts, seems to require no more than that covered employees' work on vehicles weighing 10,000 pounds or less be more than *de minimis*. *See Allen*, 846 F. Supp. 2d at 705 (following *Mayan v. Rydbom Exp., Inc.*, 2009 WL 3152136, at *9 n.12 (E.D. Pa. Sept. 30, 2009), which applied a *de minimis* threshold to TCA coverage). As discussed below, Plaintiffs' summary judgment evidence is sufficient to raise a fact issue even under this slightly more exacting standard.

B.   **Application**

Plaintiffs' response to Warrior's motion for summary judgment is supported by declarations from the bellwether Plaintiffs that provide the details of each Plaintiffs' use of the Ford F-250s. Each bellwether Plaintiff describes two distinct types of work he performed on the pickup trucks: (1) transporting fuel from "gas and fueling stations" to well sites using "slip tanks" in the bed of the trucks, and (2) transporting "the crew, tools, supplies, and equipment" between well sites, Warrior's "yard," and hotels or "man camp[s]." *See, e.g.*, Docket Entry No. 52-1 at 2–3. Each Plaintiff also asserts that both types of travel usually occurred without an attached trailer (which, as Warrior argues and Plaintiffs do not contest, would raise the weight of the vehicles beyond 10,000 pounds).

With regard to fueling trips, each bellwether Plaintiff states that he made "numerous trips during the day and during a well service job on the public highways . . . retrieving and loading fuel at gas and fueling stations to supply the fuel trailer and well service equipment for Defendant's well service jobs," and that these trips lasted 1 to 1.5 hours. *See* Docket Entry No. 52-1 at 2 (Alvarado); *id.* at 6 (Barrows); *id.* at 10 (Holland); *id.* at 14 (Newell). Unlike in *Lucas*, in which the court granted summary judgment because "Plaintiffs offered no evidence that they worked with noncommercial vehicles," 2012 WL 4754729, at *9, this claimed use of the F-250s, allegedly performed regularly and for substantial amounts of time, is sufficient to meet a "meaningful work" minimum threshold. *Compare also Vanzzini*, 995 F. Supp. 2d at 717 (finding testimony that employees sometimes used a manager's personal truck for business-related purposes sufficient to defeat summary judgment). Warrior asserts that "Plaintiffs greatly exaggerate the significance of the F-250 as a refueling resource at the well site," Docket Entry No. 56 at 12, and that such trips took place infrequently "because Warrior had multiple other means to have its equipment refueled at the well site," Docket Entry No. 51 at 37–38. The Court, however, cannot make credibility determinations at the summary judgment stage. Plaintiffs' declarations are sufficient to raise a fact issue about whether their "work, in whole or in part" as drivers was "defined as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less." *See*

TCA § 306(c)(2)(B).  Because Plaintiffs' assertion that they regularly used the pickup trucks for fueling trips overcomes Warrior's argument that they did not drive them enough to qualify as covered employees, at this stage the Court need not address Warrior's contention that Plaintiffs' trips between their lodging and the well sites should be discounted for purposes of determining FLSA eligibility under the Portal-to-Portal Act.  29 U.S.C. § 254(a).

That leaves another element of the TCA's "covered employee" definition: whether Plaintiffs "*perform[ed] duties* on motor vehicles weighing 10,000 pounds or less."  TCA § 306(c)(3).  Although Warrior notes that Plaintiffs' job descriptions did not include the operation of pickup trucks, it is "[t]he actual day-to-day job activities of the employee," not job descriptions, that are relevant in assessing an employee's entitlement to FLSA coverage.  *Cf. Kohl v. Woodlands Fire Dep't*, 440 F. Supp. 2d 626, 634 (S.D. Tex. 2006) (discussing the administrative employee exemption to the FLSA).  And although Warrior argues that Plaintiffs' "primary duties" involved the operation of larger trucks, the TCA does not refer to "primary" duties as other FLSA provisions do.  It only requires that a covered employee "performs duties" on lighter vehicles.  TCA § 306(c)(3). Each of the bellwether Plaintiff's declarations describes his use of the pickup trucks as a duty, and Warrior provides no evidence to negate this characterization.

Plaintiffs' evidence is thus sufficient to raise a fact issue on the "duties" element of the TCA definition of "covered employee."

The TCA also requires that covered employees must be employees "whose work, in whole or in part, is defined as that of a driver, driver's helper, loader, or mechanic." TCA § 306(c)(2)(A). Plaintiffs assert that they each worked as drivers, loaders, and mechanics. Warrior argues that Plaintiffs were not loaders because their jobs involved no "balancing, placing, distributing, or securing of pieces of freight," and that they were not mechanics because they only performed "simple maintenance" and "visual inspections." Docket Entry No. 56 at 14. But because Warrior does not challenge Plaintiffs' contention that they were drivers, and because Plaintiffs have established a fact issue concerning whether their driving duties were sufficient to entitle them to FLSA overtime wages, it is not necessary to address these arguments.

## V.  CONCLUSION

The parties paint very different pictures concerning Plaintiffs' use of the pickup trucks. At this stage in which all inferences must be drawn in favor of Plaintiffs, that is enough to defeat summary judgment. This credibility dispute should not be difficult to resolve at trial, however, assuming Plaintiffs are performing similar duties to those they performed prior to November 2012. Documentation of these recent activities over a reasonable period of time would

indicate how often, if at all, Plaintiffs are using the pickup trucks for fuel runs or other covered activities. Resolution of this case must await that trial in which a factfinder can decide this disputed issue. Warrior's motion for summary judgment (Docket Entry No. 51) is therefore **DENIED**.

SIGNED this 17th day of March, 2015.

_____
Gregg Costa
United States Circuit Judge[*]

---

[*] Sitting by designation.